# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA
*Alexandria Division*

FILED
11/23/2026
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

**MICHAEL MWAMBA,**
***Plaintiff*,**
v.
**AVIS BUDGET GROUP, INC.,**
**AVIS BUDGET CAR RENTAL, LLC,**
and
**AB CAR RENTAL SERVICES, INC.,**
***Defendants.***

***Case No.*: 1:26-CV-00599-PTG-WBP**

## REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 15(d)

I, Michael Mwamba, reply in support of my Motion to File a Supplemental Complaint (ECF No. 50) & in answer to Avis's Opposition (ECF No. 56).

As in my Motion, Avis Budget Group, Inc. ("ABG, Inc."), Avis Budget Car Rental, LLC ("ABC, LLC"), and AB Car Rental Services, Inc. ("ABCR") are together called "Avis." "Supplement ¶" refers to paragraphs 251 through 267 of my proposed Supplemental Complaint (ECF No. 50-1). "Count VII ¶" refers to the separately numbered paragraphs of proposed Count VII in the same exhibit.

Avis agrees on the standard. Leave may be denied for "prejudice to the opposing party, bad faith, or where the amendment would be futile." ECF No. 56 at 3. Avis argues only futility. It does not claim prejudice or bad faith. The question is whether my proposed pleading, with its factual allegations accepted as true, states plausible claims. It does.

Avis's footnote 1 says I "did not attempt to bring a claim for retaliation under the Virginia Whistleblower Protection Law in the FAC." ECF No. 56 at 2 n.1. That is

accurate. Leaving that claim out did not hand Avis its enclave defense. My First Amended Complaint "supersedes my original Complaint and clarifies and reorganizes my claims." ECF No. 29 ¶4. The same paragraph states that I plead in the alternative "not because I concede any defense. I concede none, including Defendants' assertion that Virginia law cannot reach their conduct at Dulles." *Id.*[1]

Avis's footnote also has nothing to do with futility. Both claims at issue in this Motion arise under federal law: the FLSA in Count I and 42 U.S.C. § 1981 in proposed Count VII. Neither depends on Virginia law.

## I. AVIS MISDESCRIBES THE PROTECTED ACTIVITY I PLEADED

Avis says I identify "the filing of his FAC on June 22, 2026 as protected activity," citing Supplement ¶262. ECF No. 56 at 4. Paragraph 262 does not say that. It reads: "I engaged in activity protected by the FLSA by complaining about unpaid wages and overtime compensation and by filing this federal lawsuit." Paragraph 262 identifies complaints about unpaid wages, complaints about overtime compensation, and the filing of my federal lawsuit. Neither "First Amended Complaint" nor "June 22" appears in that paragraph.

I filed this lawsuit on February 27, 2026. ECF No. 1. The lawsuit remained pending when Avis refused my return. Supplement ¶258. Avis knew of the litigation because the lawyers defending all three entities communicated the refusal. Supplement

---

[1] Nor did I give up on Virginia law. Avis told this Court that Va. Code § 40.1-33.2 "does not provide a private right of action" and instead "prescribes an administrative remedy." ECF No. 22 at 11. I used that remedy. My claim challenging the September 17 refusal is pending before the Virginia Department of Labor and Industry. The same refusal is also the subject of my pending EEOC charge, No. 570-2027-00318. That charge does not hold up Count VII. Filing an EEOC charge and using its process "are not prerequisites" for a § 1981 action, because the two remedies are "separate, distinct, and independent." Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 460–61 (1975).

¶¶255, 263. My First Amended Complaint also identifies earlier protected activity, including written complaints about unpaid wages and overtime compensation, and alleges that Avis suspended and terminated me after those complaints. ECF No. 29 ¶¶178–185.

Avis could not refuse my requested return before I asked for it. I made that request on September 10, 2026, and Avis answered on September 17. Supplement ¶¶251, 255–256. Avis itself calls the interval "the seven-day period." ECF No. 56 at 5. I do not offer that seven-day interval as the passage of time between new FLSA-protected activity and retaliation. The request established the occasion for Avis's subsequent employment decision.

Avis's three-month measurement isolates June 22, 2026, even though paragraph 262 identifies protected conduct preceding that date and a federal lawsuit that remained pending when Avis made its decision.

The filing of my First Amended Complaint did not erase the protected activity already pleaded or restart the chronology of my retaliation allegations.

## II. AVIS'S LEAD TIMING CASE WAS DECIDED ON DIFFERENT FACTS AT A DIFFERENT STAGE

Avis relies on Roberts v. Glenn Industrial Group, Inc., 998 F.3d 111 (4th Cir. 2021), as holding that a three-month lapse was insufficient to establish causation. ECF No. 56 at 4.

Roberts affirmed summary judgment on a Title VII retaliation claim. The Fourth Circuit was evaluating an evidentiary record, not deciding whether a complaint stated a plausible claim. The decisionmaker in Roberts acted without actual knowledge of the employee's protected complaints. The court also concluded that, under the facts of that case, the three-month interval did not establish causation. 998 F.3d at 127. Avis's description leaves out both points.

My proposed pleading expressly alleges that Avis knew of my protected activity when it made the September 17 decision. Supplement ¶263. Avis's own email provides further support for that allegation. I sent my request to the lawyers defending Avis in this lawsuit. I stated that my request was not a settlement proposal and that I was seeking to return to work as part of my continuing effort to mitigate damages. Supplement ¶¶251, 253; Ex. F. Avis's counsel answered: "We have conveyed your interest in reinstatement to Avis. However, given the circumstances surrounding your termination, Avis has advised that it will not consider reinstatement." Supplement ¶256; Ex. G. Avis's counsel received my request in the context of this pending lawsuit, expressly framed as an effort to mitigate damages. Counsel conveyed my interest in reinstatement to Avis and communicated Avis's refusal. That communication supports the reasonable inference that Avis knew about this lawsuit when deciding whether to consider my return. The identity of the individual decisionmaker and the information conveyed to that person remain within Avis's knowledge.

Roberts involved a different record. The decisionmaker there denied knowing about the protected complaints, and the summary-judgment evidence did not establish otherwise. The identity of the individual who ultimately authorized Avis's refusal remains within Avis's knowledge. Supplement ¶267. Roberts does not make a three-month interval dispositive. In Johnson v. Baltimore City, Maryland, 163 F.4th 808, 819–20 (4th Cir. 2026), the Fourth Circuit explained that a plaintiff may establish retaliation causation through temporal proximity or other relevant facts showing continuing retaliatory conduct and animus. The court also required factual allegations supporting the relevant decisionmaker's actual knowledge of protected activity. Johnson's retaliation claim failed because the disciplinary process began before her earlier protected complaint, and she did not adequately allege that the decisionmakers knew of her later complaint. My allegations are different.

I complained about unpaid wages and overtime to the managers involved in my suspension and termination before those decisions occurred. ECF No. 29 ¶¶178–185. My federal lawsuit remained pending when Avis refused to consider my return. Avis's counsel conveyed my request to the company and communicated its refusal. Supplement ¶¶255–265. The refusal expressly invoked the circumstances surrounding the same termination I challenge as retaliatory. Id. ¶259. These allegations must be considered together. June 22 is not a substitute for the chronology I pleaded, and the identity and knowledge of the individual who authorized the September 17 refusal remain matters for discovery. Id. ¶267.

## III. I DID NOT PLEAD MY RETURN REQUEST AS PROTECTED ACTIVITY

Avis argues that my September 10 request was not protected activity. ECF No. 56 at 5. I never said it was. Supplement ¶¶251–253 describe my unconditional request to return to work. Supplement ¶262 separately identifies my protected activity. My pleading draws that line, and Avis's argument tries to erase it. I requested reinstatement as part of my continuing effort to mitigate damages. I offered to resume my former position under the terms and conditions that existed before my suspension. I also expressly stated that my request was not a settlement proposal. Supplement ¶¶251–253. The request matters because it presented Avis with an employment decision. Avis refused even to consider my return. Supplement ¶264. The FLSA protects former employees against retaliation.

In Darveau v. Detecon, Inc., 515 F.3d 334, 342–43 (4th Cir. 2008), the Fourth Circuit recognized that former employees remain protected under the FLSA's anti-retaliation provision. The court applied the materially adverse standard to conduct occurring after employment had ended. Avis cites Darveau in its own Opposition. ECF No. 56 at 4.

An employer can engage in more than one allegedly retaliatory act. Count I already alleges a series of adverse actions, including my September 18, 2025 suspension, November 12 termination, withholding of compensation records, and other conduct occurring before and after my employment ended. ECF No. 29 ¶¶180, 185.

The September 17, 2026 refusal is the subsequent employment decision I seek permission to plead. I do not need to characterize my September 10 request as newly protected FLSA activity to allege that Avis retaliated against me when deciding whether to consider my return.

## IV. THE CIRCUMSTANCES SURROUNDING MY TERMINATION ARE DISPUTED, NOT AN ESTABLISHED LAWFUL EXPLANATION

Avis repeatedly argues that its September 17 email supplies an "obvious alternative explanation" for refusing reinstatement: the "circumstances surrounding [my] termination." ECF No. 56 at 5–6, 8. That explanation is the central problem with Avis's futility argument.

The email identifies no specific circumstance and no decisionmaker. Ashley Jones wrote that "Avis has advised" it would not consider my return. Supplement ¶256. The response did not identify which Avis entity made the decision, who authorized the refusal, or what specific circumstances were considered. Supplement ¶257; Count VII ¶8.

Avis now asks the Court to treat that unexplained statement as an established lawful reason, even though the statement refers directly to the termination challenged in Count I.

### A. The Underlying Investigation Was Disputed Before Avis Terminated Me.

My First Amended Complaint alleges that I presented Avis with transaction records contradicting the misconduct accusations used against me.

At the October 2, 2025 grievance meeting, I presented a Wizard audit trail showing that my employee identification number had been used to open a rental agreement at Avis's Fort Lee, New Jersey location, where I had never worked. ECF No. 29 ¶¶125–

127. I also requested review of surveillance footage from the cameras above my workstation at Dulles. My complaint alleges that Avis never produced that footage or explained what it showed. Id. ¶128. Wojcik did not resolve the Fort Lee evidence at the October 2 meeting. Id. ¶129. These allegations identify specific factual disputes underlying Avis's accusation of dishonesty. They are not merely a disagreement with Avis's characterization of my conduct.

**B. The District Manager Denied My Grievance and Then Heard the Appeal of His Own Denial.**

On October 15, 2025, District Manager John Wojcik denied my grievance in writing, invoking "dishonesty & theft." ECF No. 29 ¶131. I submitted a written appeal on October 17. Id. ¶134. Article 9 of the collective bargaining agreement establishes the grievance procedure. Step 1 assigns grievance review to the Airport Manager or designated Operations Manager. Step 2 permits an appeal by the Union to the District Manager. Step 3 provides for submission to the Region Manager and possible arbitration. Ex. A, Art. 9; ECF No. 29 ¶135.

My First Amended Complaint alleges that Avis installed Wojcik, already the District Manager, as the Step 1 decisionmaker. My appeal therefore ran to the same person who had issued the decision under appeal. ECF No. 29 ¶135. Wojcik ran the October 22 appeal meeting. He questioned me about the system reports I had presented and asked who I thought had used my agent ID. He then asked Spencer whether he had any questions. Id. ¶¶137–139.

No higher management authority reviewed the denial, no written appeal decision was issued, and the grievance did not reach Step 3, according to my pleaded allegations. Id. ¶¶135, 140. Human Resources representative Marlon Spencer participated in the October grievance proceedings. Union President Tim Brown also participated. Their presence did not result in a written decision by a higher management authority. Id. ¶¶121, 135–140.

The procedural history matters because Avis now relies on the circumstances of that same disciplinary process to justify refusing even to consider reinstatement.

### C. Wojcik Subsequently Signed my Termination Letter.

On November 12, 2025, at 5:08 p.m., Airport Manager Moslem Mangal called me with District Manager John Wojcik on speakerphone. Wojcik told me that the investigation had concluded and that I was terminated. ECF No. 29 ¶143.

Earlier that day, at 12:14 p.m., I had sent Mangal confirmation of my NLRB charge arising from the unresolved wage dispute. At 4:12 p.m., Mangal told me he had not spoken with Wojcik about my suspension. Fifty-six minutes later, Mangal initiated the termination call with Wojcik on speakerphone. Id. ¶¶141–143.

Wojcik signed the termination letter alone. My First Amended Complaint alleges that the letter contained no Human Resources signature or copy notation and that Avis never issued a written decision on my pending grievance appeal. Id. ¶¶144–147. The same District Manager who controlled my disputed compensation, denied my grievance, and heard the appeal of his own denial announced my termination during a call initiated by the manager I had informed about my NLRB charge. That sequence is already pleaded in Count I.

### D. Avis's Own Records Contradict Material Aspects of the Termination Allegations.

My First Amended Complaint also challenges the termination letter's assertion that I conducted rental transactions while not punched in or scheduled to work.

For the relevant August 2025 workweek, Avis's payroll records recorded 41.65 hours of work, including overtime. My complaint also identifies contemporaneous communications supporting my scheduled August 19 shift and a geotagged photograph placing me in the employee parking lot shortly before a transaction attributed to my agent identification number. ECF No. 29 ¶¶148–153.

Those allegations dispute both the scheduling accusation and the attribution of particular transactions to me. The Court need not decide whether the records ultimately establish pretext to recognize that Avis's termination rationale is contested on specific facts. The pleading identifies the disputed records, the allegedly false statements, and the manager who signed the termination letter.

**E. The VEC Determination Further Establishes That the Misconduct Allegations Were Contested.**

On January 26, 2026, the Virginia Employment Commission determined that the evidence presented did not establish misconduct connected with work sufficient to disqualify me from unemployment benefits. Count VII ¶10.

I do not contend that the unemployment determination conclusively decides whether Avis lawfully terminated me. The determination is relevant because it concerns the misconduct allegations Avis later invoked when refusing reinstatement. Avis's September 17 response did not indicate whether it considered that determination, an established reinstatement policy, or any individualized assessment of my qualifications. Count VII ¶¶8, 10.

**F. The September 17 Refusal Did Not Resolve Any of These Disputes.**

I requested reinstatement while my federal retaliation claim was pending. I asked Avis to identify the person responsible for any refusal. Supplement ¶254. Avis responded that the circumstances surrounding my termination prevented even consideration of reinstatement. It supplied no specific findings, no decisionmaker, and no identified policy. Supplement ¶¶255–257; Count VII ¶8. The September 17 communication was a subsequent employment decision, made while Avis knew that I was challenging the original termination in federal court. For Count I, I allege that the refusal continued the earlier retaliatory course of conduct. Supplement ¶¶259, 264–266. For Count VII, I separately allege that Avis exercised its employment discretion differently when I, a Black former employee, requested consideration for

return. Count VII ¶¶20–24. The Court does not need to determine whether Avis's asserted explanation is ultimately true to decide whether I may plead the subsequent decision. The issue is whether Avis's reference to disputed termination circumstances defeats the proposed claims as a matter of pleading. It does not. Avis cannot establish the lawfulness of the September 17 refusal merely by invoking the same disputed termination that forms the basis of my existing federal retaliation claim.

## V. Footnote 2 Leaves Out the Fact That Matters About Pirasteh

In footnote 2, Avis argues that Esmaeil Pirasteh's continued employment undermines Count I because he participated in federal wage litigation without suffering the retaliation I allege. ECF No. 56 at 8 n.2. The footnote leaves out how my pleading identifies him: "A non-Black Operations Manager." Count VII ¶14. That distinction matters. I allege that a non-Black Operations Manager continues working for Avis while participating in federal wage litigation. I also allege that Avis refused even to consider returning me, a Black former employee, to work while my federal wage litigation was pending.

My proposed pleading identifies both the protected conduct and the racial distinction. Count VII ¶¶14, 20–21. Avis's own causation argument supplies the answer to its footnote. Avis quotes the but-for principle directing a court to change one thing at a time and determine whether the outcome changes. ECF No. 56 at 6. Bostock v. Clayton County, 590 U.S. 644, 656 (2020), explains that an event may have multiple but-for causes. My lawsuit and my race can each be a but-for cause of the same refusal. Alleging one does not concede the absence of the other. Pirasteh's continued employment shows that participating in federal wage litigation did not automatically disqualify an employee from continued employment with Avis. His experience does not establish that my lawsuit played no part in Avis's decision. Nor have I alleged that Avis retaliates against every employee who asserts wage-and-

hour rights. My First Amended Complaint identifies the specific protected activity, management involvement, adverse actions, timing, and alleged pretext concerning my employment. ECF No. 29 ¶¶178–185. Those allegations are not defeated merely because Avis treated another employee differently. Rule 8(d)(3) also permits separate claims regardless of consistency. Avis applies inconsistent comparisons to Pirasteh.

For Count VII, Avis argues that he is too different from me to serve as a comparator. ECF No. 56 at 7–8. For Count I, Avis uses his different treatment to argue against retaliation. Pirasteh still works for Avis and has never needed to request reinstatement. Count VII ¶14. If Avis considers that difference sufficient to defeat his use as a comparator in Count VII, it cannot simply disregard the same difference when using him to attack Count I. That is especially significant because Count I of my First Amended Complaint is not challenged by Avis's pending partial motion to dismiss. That motion concerns Counts III through VI. ECF No. 56 at 2.

Footnote 2 also contains an incomplete citation: "ECF No. 50-1 at ¶ with FAC ¶¶ 176-186." Avis does not identify the paragraph in ECF No. 50-1 on which that reference supposedly relies. The footnote neither defeats my existing retaliation allegations nor establishes that the separate race-discrimination allegations in Count VII are implausible.

## VI. COUNT VII PLEADS FACTS, NOT LABELS

Avis opens its Opposition by asserting that my proposed Supplemental Complaint "fails to allege any facts whatsoever." ECF No. 56 at 1. Six pages later, Avis discusses three of my comparators by name and describes their conduct. Id. at 7–8.

Avis also says I allege "only" that I am Black, Avis refused reinstatement, and non-Black employees received better treatment. Id. at 7. But proposed Count VII alleges that:

1. My September 10 request specifically identified Mirriam Khan, a non-Black employee Avis had returned to work after a suspension of nearly a year, before Avis refused my request. Count VII ¶6.
2. Avis identified no reinstatement policy or disqualifying act, provided no individualized explanation concerning my qualifications, and did not copy the Human Resources representative I expressly requested. Id. ¶8.
3. The Virginia Employment Commission determined that the evidence presented did not establish misconduct connected with work sufficient to disqualify me from unemployment benefits. Id. ¶10.
4. Kathy Delridge, a white employee, remained employed after I reported personally witnessing her fuel a personal rental car with Avis gasoline. The same District Manager invoked dishonesty and theft against me. Id. ¶¶11–12.
5. Khan returned after a lengthy suspension that I understand involved a physical confrontation with a customer. Id. ¶13.
6. Esmaeil Pirasteh, a non-Black Operations Manager, remains employed while participating in federal wage litigation against Avis. Id. ¶14.
7. Kamaria Smith, a Black employee, experienced personnel decisions involving the same District Manager, union steward, and Human Resources representative involved in my employment dispute. Id. ¶¶15–18.
8. I remained qualified, ready, and willing to return to my former position. Id. ¶19.
9. I allege that race was a but-for cause of Avis's categorical refusal to consider my reinstatement request. Id. ¶21.

Avis's Opposition does not address Kamaria Smith. Smith's allegations are background evidence of how management exercised its authority. I did not identify her as an employee who requested reinstatement under circumstances identical to mine. Count VII ¶17 expressly makes that distinction.

The Court must evaluate the factual allegations together, not reduce Count VII to a statement of my race and Avis's refusal. At the pleading stage, I am not required to prove a prima facie case of discrimination. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510–11 (2002). I recognize that § 1981 requires but-for causation. Comcast Corp. v. National Association of African American-Owned Media, 589 U.S. 327, 341 (2020).

Count VII expressly pleads that causation and identifies facts supporting the inference. The refusal followed my identification of an employee whom Avis had reinstated after serious disciplinary circumstances. Avis offered no individualized explanation, no identified policy, and no decisionmaker. Most significantly, Count VII does not allege merely that Avis would have hired me but for my race. Paragraph 21 alleges: "But for my race, Avis would not have categorically excluded me from consideration and would have evaluated my request under the same standards and discretion it applied to non-Black employees." That is the employment decision I challenge. Avis's argument repeatedly addresses whether it was obligated to reinstate me. My proposed claim concerns its alleged discriminatory refusal even to consider reinstatement. I seek permission to litigate that decision, not an immediate finding that Avis was legally required to hire me.

## VII. AVIS CHALLENGES THE DECISIONMAKER ALLEGATIONS WHILE IGNORING HOW AUTHORITY OPERATED AT DULLES

Avis argues that comparators must have "dealt with the same supervisor" and faults my proposed Count VII for failing to allege that the same decisionmaker evaluated their employment circumstances. ECF No. 56 at 7–8.

That argument overlooks both my existing allegations and the governing pleading standard.

### A. Johnson Rejects an Exact One-To-One Comparator Requirement At The Pleading Stage.

Avis cites Johnson v. Baltimore Cnty., 163 F.4th 808, 811 (4th Cir. 2026). ECF No. 56 at 7. The decision is Johnson v. Baltimore City, Maryland, 163 F.4th 808 (4th Cir. Jan. 6, 2026). In Johnson, the Fourth Circuit reversed the dismissal of a race-discrimination claim after the district court required overly exact matches between the plaintiff's alleged misconduct and the conduct of proposed comparators. The Fourth Circuit held that comparator analysis does not require a "perfect one on one fit." Id. at 817. The court instead examined the relevant similarities between employees, including the standards governing their conduct and the seriousness of their alleged offenses.

Johnson involved a Title VII disciplinary claim, but its analysis of comparator sufficiency at the pleading stage directly addresses the standard Avis invokes here. My proposed comparators are not interchangeable. I have identified the distinct purpose of each comparison:

- Delridge's treatment concerns the application of misconduct and dishonesty standards.
- Khan's treatment concerns Avis's discretion to return an employee after serious disciplinary circumstances.
- Pirasteh's continued employment concerns Avis's treatment of another employee participating in federal wage litigation.
- Smith's allegations provide background concerning the exercise of management authority involving Black employees.

I do not allege that each employee followed an identical disciplinary path. Johnson does not require that degree of identity before a plaintiff may plead discrimination.

**B. My Existing Complaint Already Identifies The Disciplinary Decisionmaker.**

My First Amended Complaint identifies John Wojcik as the District Manager responsible for the original disciplinary decision. Wojcik personally denied my grievance by invoking dishonesty and theft. ECF No. 29 ¶131. My complaint also alleges that Delridge remained employed despite reported misconduct and that the same decisionmaker, Wojcik, did not apply the same dishonesty consequences to her. Id. ¶¶167–168.

The proposed Count VII carries those allegations forward by identifying Wojcik's involvement in my discipline and Delridge's more favorable treatment. Count VII ¶¶9, 11–12. Avis understates Delridge's alleged conduct when it describes her merely as having "used company gasoline." ECF No. 56 at 7. My pleading alleges that she used Avis gasoline to fuel a personal rental car and that management knew of the reported conduct. Count VII ¶11. Wojcik was not a peripheral manager. He was the District Manager who controlled my adjusted Preferred Services compensation, handled my grievance, heard the appeal of his own denial, and signed my

termination letter. ECF No. 29 ¶¶29, 131, 135, 144. The original disciplinary decisionmaker is therefore already identified.

### C. The Collective Bargaining Agreement Places Discipline And Rehiring Within Management's Authority.

The collective bargaining agreement is already part of this case. My First Amended Complaint relies on its grievance, discipline, and discharge provisions, and Count VII pleads that the agreement governed my employment. ECF No. 29 ¶¶134–135, 144–145; Count VII ¶3. I attach its cover and Articles 3, 7, 8, and 9 as Exhibit A. The Court may consider a document that is integral to the complaint when its authenticity is not disputed. Goines v. Valley Community Services Board, 822 F.3d 159, 166 (4th Cir. 2016). The agreement assigns these powers to management:

- Article 7(A) reserves the authority to reprimand, suspend, discharge, or otherwise discipline employees for just cause. Ex. A, Art. 7(A);
- Article 7(B) expressly reserves the authority to hire and rehire employees. Ex. A, Art. 7(B);
- Article 9 establishes the grievance and appeal procedure. Under Article 9, Step 1 grievances go to the Airport Manager or designated Operations Manager. Step 2 permits an appeal by the Union to the District Manager. Ex. A, Art. 9.

My complaint alleges that Avis installed Wojcik, its District Manager, as the Step 1 decisionmaker, so my appeal ran to that same District Manager. ECF No. 29 ¶135. The agreement does not identify a particular individual who must authorize every reinstatement decision. But the agreement does establish that both disciplinary and rehiring decisions fall within management's authority. My allegations concerning Kamaria Smith, another Black employee, involve the same management officials. Wojcik, as District Manager, supported union steward Kathy Delridge against Smith. Smith then reported the incident to Marlon Spencer in Human Resources, who, according to Smith, closed the investigation. Count VII ¶¶15–17. Wojcik and Spencer also exercised authority over my employment and disciplinary proceedings. Id. ¶18.

These allegations identify the management officials involved in both histories, rather than leaving the decision-making structure unexplained.

## D. Avis's Code of Conduct, Internal Investigation Procedures, And Dulles Concession Obligations Establish Common Employment Standards.

Avis invoked its Code of Conduct when it terminated me. ECF No. 29 ¶145. I attach excerpts of the Code as Exhibit I. The Code applies to all officers and employees of the Company, its subsidiaries, and affiliates. Ex. I at 5. Its Equal Employment Opportunity Policy applies to being hired and to disciplinary actions. The policy expressly prohibits unlawful discrimination based on race and declares zero tolerance for unlawful discrimination. Id. at 14.

Avis's internal Incident Report Management Standard Operating Procedure, SOP-003, further establishes that the Company's compliance procedures operate across its related companies. The SOP has a global scope. It names the Chief Compliance Officer as the responsible executive, identifies Business Ethics & Compliance as the responsible area, and lists Legal and Human Resources under "Who Should Read" and "Required Training." It requires reported incidents and complaints to reach the responsible personnel for investigation and documentation, regardless of the reporting channel. Ex. K at 1.

Appendix I expressly covers Avis Budget Group, including all of its related companies, and imposes an affirmative reporting and escalation duty on management and supervisory employees. The matters requiring escalation include inaccurate entries in company records, questionable accounting practices, discrimination, retaliation, and violations of company work rules. Id. at 4.

My First Amended Complaint alleges that I raised compensation discrepancies and disputed the misconduct accusations directly with management. ECF No. 29 ¶¶125–129, 178–185. Under Avis's own procedures, potential violations of the Code, company policy, or law generally must be entered into Convercent for investigation. Assigned

investigators must document their findings and any disciplinary outcome. Ex. K at 2–3, 5. The identities of the responsible investigators and the records generated under those procedures are matters for discovery.

Avis's Opposition says comparators must be "subject to the same standards." ECF No. 56 at 7. Delridge, Khan, Smith, and Pirasteh all worked at Dulles, as I did. Count VII ¶¶6, 11, 14–15. Avis's published equal-employment policy applied across its corporate organization, while SOP-003 established a common reporting and investigation framework for its related companies. Ex. I at 5, 14; Ex. K at 1–4.

In Johnson, the Fourth Circuit treated the plaintiff and her proposed comparators as subject to the same standards because all of them were officers of the same police department. 163 F.4th at 817. A request to return to work asks the employer to hire again. The bargaining agreement treats rehiring as a management power, and the Code's policy expressly covers hiring. Ex. A, Art. 7(B); Ex. I at 14.

Avis's refusal even to consider my return was therefore a hiring decision subject to its published equal-employment policy. Avis argues that the comparison fails unless I identify the same individual decisionmaker. ECF No. 56 at 8. But Avis publishes one equal-employment policy for hiring and discipline across its corporate organization. Its SOP establishes a common process for investigating complaints throughout its related companies. Whether Avis applied those standards to me as it applied them to non-Black employees is a question for discovery, not a reason to deny leave.

Avis also operates at Dulles as a private concessionaire. ECF No. 29 ¶46. Federal rules expressly address nondiscrimination in employment at obligated airports: "Employment at obligated airports, including employment by tenants and concessionaires shall be available to all regardless of race, creed, color, sex, or national origin." 49 C.F.R. pt. 21, app. C(a)(1)(ix). Each airport operator must require each tenant, contractor, and concessionaire to covenant that it will comply with the nondiscrimination requirements of Part 21. Id. app. C(b)(1). Dulles is such an airport. The Metropolitan Washington Airports Authority maintains a Title VI Program Plan

for Dulles and posts notice that airport concessionaires may not discriminate in employment opportunities. Ex. J at 5, 7 & Attachment 4 (Unlawful Discrimination Poster).

MWAA's program identifies contractual civil-rights obligations and procedures for communicating nondiscrimination requirements to concessionaires.

I do not offer the Code, the SOP, or these airport rules as a separate basis for liability, and none of them proves how Avis applied its standards. They establish the common policies and documented investigative procedures against which Avis's treatment of me and other employees can be examined.

**E. Avis Withheld the Identity of the September 17 Decisionmaker.**

Avis argues that none of my comparators was terminated, requested reinstatement, and received it from the same decisionmaker. ECF No. 56 at 8. But Khan's experience demonstrates a different point. Avis exercised discretion to return an employee following serious disciplinary circumstances. It then refused even to consider my request. Count VII ¶¶8, 13, 20. I expressly identified Khan before Avis made its September 17 decision. Count VII ¶6. As for that refusal, I asked Avis to identify the person who made or authorized the decision. Count VII ¶5; Supplement ¶254. I also asked that Human Resources representative Marlon Spencer be included in Avis's response. Count VII ¶5.

Avis did not identify the decisionmaker. Spencer was not copied. Count VII ¶8; Supplement ¶257. The identity of the individual who authorized the September 17 refusal is not a separate element of a § 1981 claim. The relevant question is whether Avis's decision plausibly interfered with my contractual rights because of race. My proposed Count VII alleges that ABG, Inc., ABC, LLC, and ABCR exercised or shared authority over the employment decisions at issue. Count VII ¶23. The September 17 email was communicated by counsel representing all three entities. Avis did not identify which entity made or authorized the decision. Which persons participated in that decision, what information they considered, and which entity authorized the

refusal are matters within Avis's knowledge and control. Supplement ¶267; Count VII ¶23.

**The pleading standard cannot become a bulwark against discovery of facts exclusively within Defendants' control.**

I have identified the management officials involved in my original discipline. I have identified the subsequent decision refusing even to consider my return. I specifically requested the identity of the person responsible for that refusal before filing my supplemental pleading. Avis cannot withhold that identity and then demand that I identify the person before discovery.

## VIII. Conclusion

Avis does not claim prejudice or bad faith. Its futility argument fails because it depends on descriptions of my pleading that the pleading itself contradicts. Avis identifies June 22 as the date of protected activity despite Supplement ¶262 identifying my earlier wage complaints and the federal lawsuit. It argues against treating my September 10 return request as protected activity, although I never pleaded the request that way.

Avis treats an unexplained reference to my termination as an established lawful reason for refusing reinstatement, even though the termination is disputed in Count I on detailed factual grounds. Its Opposition overlooks the grievance proceedings in which the District Manager denied my grievance and then heard the appeal of his own denial. Avis omits Kamaria Smith from its comparator discussion. It uses Pirasteh's continued employment to attack Count I while arguing that his circumstances are too different to support Count VII.

It demands an identical decisionmaker even though its own Code of Conduct establishes a common equal-employment policy, while SOP-003 establishes a companywide process for investigating alleged violations. And it challenges my identification of the September 17 decisionmaker despite my express request for that information and Avis's failure to provide it.

The proposed Supplemental Complaint identifies a new employment decision occurring after the First Amended Complaint, protected activity known to Avis, the alleged continuation of retaliation, and specific facts supporting an inference that race affected Avis's categorical refusal to consider my return. The proposed pleading also expressly distinguishes the refusal to consider reinstatement from the ultimate question of whether Avis would have rehired me. I am not asking the Court to resolve those factual disputes on this Motion. I am asking for permission to plead them and have them resolved through the ordinary litigation process.

For these reasons, I respectfully request that the Court grant my Motion for Leave to File a Supplemental Complaint (ECF No. 50), permit my supplemental allegations to be considered with Count I, permit the addition of Count VII under 42 U.S.C. § 1981, and grant the remaining relief requested in my Motion.

Respectfully submitted,

**Michael Mwamba**
***Plaintiff, pro se***
9600 Marathon Ter, Apt 102
N. Potomac, MD 20878
301-408-8410
michaelmwamba@me.com
**November 23, 2026.**

# CERTIFICATE OF SERVICE

I certify that on November 23, 2026, I submitted the foregoing Reply and its accompanying exhibits to the United States District Court for the Eastern District of Virginia through the Electronic Document Submission System (EDSS).

On the same date, I transmitted copies by electronic mail to:

Paul J. Kennedy
Littler Mendelson, P.C.
Counsel for Defendants
*pkennedy@littler.com*

***Courtesy Copies:***

John O'Neill
Executive Vice President and Chief Operating Officer,
Americas
Avis Budget Group, Inc.
*John.o'neill@avisbudget.com*

John Wojcik
Dulles District Manager
Avis Budget Group
*john.wojcik@avisbudget.com*

**Michael Mwamba**
***Plaintiff, pro se***

**November 23, 2026.**

# LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that no attorney has prepared, or assisted in the preparation of:**

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 15(d)**

*(Title of Document)*

**MICHAEL MWAMBA**

*Name of Pro Se Party*

Signature of Pro Se Party

Executed on: **November 23, 2026**